UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 19-22928-CV-KING
MAGISTRATE JUDGE REID

MARVIN PACE,

      Plaintiff(s),

v.

A. LAWERANCE,[1]
*et al*.,

      Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.  Introduction

This Cause is before the Court upon Plaintiff's Amended Complaint filed under 42 U.S.C. § 1983. [ECF No. 13]. Stated broadly, Plaintiff alleges he endured a variety of constitutional violations during his pre-trial detention at Metro West Detention Center.

This matter was referred to the Undersigned for consideration and report pursuant to S.D. Fla. Admin. Order 2019-2. [ECF No. 2]. As set forth below, certain claims should **PROCEED** and others should be **DISMISSED**.

---

[1] The Plaintiff spells the defendant's name as "Lawerance." Because the proper spelling is more likely " Lawrence," that spelling is used throughout this Report.

## II.    Claims

Liberally construing the Amended Complaint, pursuant to *Haines v. Kerner*,

404 U.S. 519, 520-21 (1972), Plaintiff raises the following claims:

(1) Defendants Lewis and Barnes applied excessive force on a pretrial detainee in violation of the Fourteenth Amendment;

(2) Defendants Lewis and Barnes are liable for committing state law battery;

(3) Defendant Lewis showed deliberate indifference to Plaintiff's serious medical needs;

(4) Defendants Martin, Kaesenthout, and M.P. failed to intervene during the second instance of alleged excessive force applied by Defendant Lewis;

(5) Defendant Lewis violated Plaintiff's religious rights in violation of RLUIPA and the First Amendment;

(6) Defendant Lewis abridged Plaintiff's right to communicate;

(7) Defendant Lewis created conditions of confinement that violated the Eighth Amendment's proscription against cruel and unusual punishment;

(8) A Jane Doe Defendant violated Plaintiff's right to due process before placing Plaintiff in disciplinary confinement;

(9) Defendants Lewis and Barnes violated Plaintiff's right to due process before placing Plaintiff in disciplinary confinement; and

2

(10)   The Defendants failed to protect Plaintiff from excessive force in violation of the Eighth Amendment.

[ECF No. 13].

### III.  General Allegations

In this action, Plaintiff raises claims against eight Defendants in their individual and official capacities: (1) Captain Lawrence; (2) Lieutenant M.P.; (3) Sergeant Lewis; (4) Corporal Barnes; (5) Officer Kaesenthout; (6) Sergeant Duke; (7) Corporal Officer Byron; and (8) Counselor Jane Doe.

The majority of Plaintiff's claims and allegations relate to two instances where force was applied on July 13, 2017. As will be explained in further detail, Plaintiff, who states he is a paraplegic, alleges Defendant Lewis and Defendant Barnes struck him while he was laying in his bed and continued to punch him after he was dragged to his cell floor. [ECF No. 13, at 17-18]. Plaintiff claims this conduct amounted to excessive force or state law battery. [*Id.* at 17, 19].

After this application of force, Plaintiff was taken to the medical department where his injuries were treated. [*Id.* at 18-19]. However, upon his return to his cell, Defendant Lewis reportedly flipped Plaintiff out of his wheelchair onto the floor and began kicking him. [*Id.* at 18]. Defendant Lewis allegedly refused to take Plaintiff to the medical department after this second application of force. [*Id.* at 18]. Plaintiff also alleges that Defendants Kaesenthout and Martin were present during the second application of force. [*Id.* at 18].

3

Plaintiff makes a number of other claims that are addressed within the discussion section of this Report.

### III. Standard of Review

According to 28 U.S.C. § 1915 of the Prison Litigation Reform Act, which permits *in forma pauperis* (IFP) proceedings, it reads in pertinent part:

> (e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that -
>
> * * *
>
> (B) the action or appeal -
>
> * * *
>
> > (i) is frivolous or malicious;
> >
> > (ii) fails to state a claim on which relief may be granted; or
> >
> > (iii) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

Plaintiff is proceeding IFP. [ECF No. 6]. Thus, the Amended Complaint is subject to the screening requirements of 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003) (explaining this principle in a RICO suit); *Floyd v. City of Miami Beach*, 730 F. App'x 838, 841 (11th Cir. 2018) (applying this principle in a § 1983 context).

When determining whether a pleader has stated a claim upon which relief can be granted, factual allegations must be accepted as true, and legal conclusions are not entitled to that assumption. *See Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1106-07 (11th Cir. 2015) (relying upon *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Further, while *pro se* filings are held to less stringent standards than pleadings drafted by attorneys, *see Haines*, 404 U.S. at 520-21, *pro se* filings must suggest the existence of "some factual support for a claim." *Jones*, 787 F.3d at 1107.

The assumed-as-true factual allegations must cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Whether a claim is plausible is a context-specific inquiry, which is met if courts can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

## IV. Discussion

A. <u>Excessive Force</u>

Stated broadly, "to prevail on a claim under [Section] 1983, a plaintiff must demonstrate that (1) the defendant deprived [plaintiff] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth

Amendment's Due Process clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to … convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citation omitted).

The excessive force inquiry for pretrial detainees includes two separate state-of-mind questions:

> The first concerns the defendant's state of mind with respect to his physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive."

*Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015) (emphasis in original omitted).

As to the first inquiry, "the defendant must possess a purposeful, knowing or possibly reckless state of mind[,]"accidental or negligent conduct will not suffice. *Id.* at 396.

As for the second question, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. This standard cannot be applied mechanically, and "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397.

A number of factors may bear on the reasonableness or unreasonableness of the force applied. *Id.* For example, courts may consider (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the

plaintiff's injury"; (3) "any effort made by the officer to temper or limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id.* at 397. This is not an exhaustive list of potentially relevant factors. *Id.*

At this juncture, Plaintiff has articulated a plausible claim of excessive force against Defendants Lewis and Barnes pursuant to Plaintiff's allegations involving the force applied while in his cell. If proven true, their conduct was objectively purposeful, and the relevant factors would support an unreasonable use of force. *See Kingsley*, 135 S. Ct. at 2472-73.

Additionally, an excessive force claim should proceed against Defendant Lewis with respect to Plaintiff's allegations of being thrown out of his wheelchair and then being kicked by Defendant Lewis. The allegations, if true, support a plausible inference of Defendant Lewis's purposeful conduct and unreasonable use of force. *See Kingsley*, 135 S. Ct. at 2472-73.[2]

B. State Law Battery

*i. Supplemental Jurisdiction*

Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over state law claims that arise out of a common nucleus of operative fact as the federal

---

[2] Plaintiff's invocation of Fla. Stat. §§ 784.045 and 825.102(3) as a basis for relief is frivolous, as those citations refer only to criminal laws ordinarily charged by information or grand jury in state court proceedings.

claim. *See, e.g.*, *Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997). Because the state law claims of assault and battery arise from the same nucleus of operative facts as the Eighth Amendment claims, which are already plausible and arise under 28 U.S.C. § 1331, this Court may exercise supplemental jurisdiction over Plaintiff's claims of assault and battery. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1328-29 (11th Cir. 2017). At this early stage, as the reasons that follow, supplemental jurisdiction should be exercised. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

*ii. State Law Battery*

Under Florida law, "unless [an] officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," a tort cannot be raised against the official. Fla. Stat. § 768.28(9)(a).

The tort of battery, as defined by Florida law, is "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Robinson v. Lambert*, 753 F. App'x 777, 784 (11th Cir. 2018) (quoting *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 3d DCA 2005)). Florida defines assault as an "intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present

8

ability to effectuate the attempt." *Robinson*, 753 F. App'x at 784 (quoting *Lay v. Kremer*, 411 So. 2d 1347, 1349 (Fla. 1st DCA 1982)).

At this early stage, the battery claims should proceed against Defendant Lewis and Barnes. *See, e.g.*, *Robinson*, 753 F. App'x at 784 (overcoming Florida's statutory immunity at summary judgment and allowing assault and battery claims to move forward in light of the genuine issue of material fact on malicious and sadistic intent).

## C. Failure to Intervene

To state a claim for failure to intervene, it must be alleged that an officer was "in a position to intervene," and the Eleventh Circuit has required specific evidence of how an officer could have observed or stopped the use of excessive force. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)

Plaintiff has provided a minimal showing that he could plausibly prevail on this claim. Plaintiff alleged Defendants Kaesenthout, Martin, and Lieutenant M.P. were present when he was flipped out of his wheelchair and kicked several times by Defendant Lewis. Plaintiff has made a plausible showing, at least at this juncture, that these two defendants were in a position to intervene. Therefore, the failure to intervene claims should proceed against Defendants Kaesnthout, Martin, and Lieutenant M.P..[3]

---

[3] Although Plaintiff stated Defendant Lawrence and Wilson were liable for failing to intervene [ECF No. 13, at 22-23], a liberal construction of his complaint indicates that he meant failure-to-protect. At any rate, because there are no allegations those Defendants were present or

D. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to a pretrial detainee's serious medical needs constitutes a Fourteenth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005). Nevertheless, a pretrial detainee's claims of inadequate medical care are evaluated under the same standard as a prisoner's claim under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017).

To prevail on a deliberate-indifference claim, a plaintiff must show: (1) a serious medical need; (2) deliberate indifference to that need; and (3) causation between that indifference and the injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

"[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Regional Youth*

---

had an actual opportunity to intervene, Plaintiff would have failed to state a claim against them. Further, because there is no such thing as "civil negligence under the U.S. Constitutions (sic)" [ECF No. 13, at 22], Plaintiff's constitutional "civil negligence" claim against Defendant Lawrence "et al" is frivolous and fails to state a claim. Lastly, like Plaintiff's other invocations of state law, Plaintiff's reference to Fla. Stat. § 825.102 [ECF No. 13, at 2] relates only to criminal laws that apply in state criminal proceedings. Thus, he has not stated a claim upon which relief can be granted in this Court as to those issues.

*Detention Center*, 40 F.3d 1176, 1187 (1994) (citations omitted), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). *See also Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

As for determining what conduct or lack of conduct qualifies under the deliberate indifference component, plaintiffs must satisfy three requirements: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. *See Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016).

Causation, the final requirement for a deliberate indifference claim, requires a link between the injury and the constitutional violation. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). In other words, the unconstitutional act must be a proximate cause of the injuries, *see LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993), or should otherwise show the defendant's personal participation in the constitutional violation. *Goebert*, 510 F.3d at 1327.

To illustrate the high bar of such a claim, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Similarly, a simple difference in medical opinion between a prison's medical staff and the inmate as to the inmate's diagnosis

or course of treatment cannot support a deliberate indifference claim. *See id.* Once an inmate receives medical care, courts are reluctant to question the adequacy of medical care provided to the inmate. *See, e.g.*, *Harris*, 941 F.2d at 1507; *see also Lloyd v. Van Tassell*, 318 F. App'x 755, 760 (11th Cir. 2009).

### i. Refusing to Take Plaintiff to the Medical Department

Plaintiff also alleges Defendant Lewis refused to take him to the medical department when Plaintiff reported back and side pain after being flipped out of his wheelchair and repeatedly kicked. [ECF No. 13 at 18]. At this early stage, Plaintiff can make a plausible showing on all necessary elements for his deliberate indifference claim. This claim should, therefore, proceed.

### ii. Confiscating Plaintiff's Devices and Placing Plaintiff in a Cell Inaccessible to Plaintiff's Disability

Plaintiff claims Defendant Lewis took his wheelchair, his back brace, and placed him in a non-handicap accessible cell. [ECF No. 13 at 21-22]. In the proceeding pages of his complaint, he states these events "exceed[ed] a 7 day time period," but gives no other indication of how long the event lasted. [ECF No. 13 at 18, 21]. Thus, it appears Plaintiff was placed in this cell for a temporary period of time. Liberally construed, Plaintiff raises a claim of deliberate indifference to his serious medical needs.

Even so, Plaintiff has not provided allegations showing that being without his devices or being placed in a cell that lacks accessibility for disabled persons for a

temporary period of time caused a serious risk to his health or condition. *See Farrow*, 320 F.3d at 1243. Without allegations to that effect, this claim fails to state a claim and should be dismissed. Alternatively, to the extent this was a condition of confinement claim, Plaintiff has failed to state a claim upon which relief can be granted for the same reasons. *See Hunt v. Warden*, 748 F. App'x 894, 900 (11th Cir. 2018) (lacking allegations that non-handicap-accessible cells caused an unreasonable risk of serious damage to plaintiff requires dismissal).

E. Access to Courts

In *Bounds v. Smith*, 430 U.S. 817, 825 (1977), the Supreme Court held prisoners were entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." However, "in order to assert a claim arising from the denial of meaningful access to the courts, an inmate [or pretrial detainee] must first establish an actual injury." *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006). This means a plaintiff should show officials impeded his efforts to pursue a nonfrivolous claim. *See id.*

Here, Plaintiff asserts Defendant Lewis and Defendant Barnes removed Plaintiff's court papers and other related documents from his cell for a period "exceeding 7 days," which caused Plaintiff to miss deadlines for unspecified motions and grievances. [ECF No. 13 at 18]. Relatedly, Plaintiff alleges Defendant Barnes took Plaintiff's pens, pencils, papers, and limited his phone usage. [*Id.* at 19]. The

following day, as Plaintiff claims, Defendant Lewis and Defendant Barnes came to Plaintiff's cell and removed all of his court documents, discovery, and transcripts from his criminal case. [*Id.*].

Even so, Plaintiff provides no allegations clarifying how deprivation to writing utensils or court materials for a period "exceeding 7 days" caused actual harm. While he vaguely indicates a filing was untimely, Plaintiff did not identify the specific proceeding or detail the effect of such untimeliness. Likewise, Plaintiff did not clarify whether he was later excused from such untimeliness. Without such allegations, Plaintiff cannot show actual prejudice and, therefore, this claim should be dismissed for failure to state a claim.

F. Due Process and Incident Reports

A pretrial detainee may not be punished without due process of law. *See Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1347 (11th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "[W]hether a condition of pretrial detention amounts to punishment turns on whether the conditions is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose." *Jacoby*, 835 F.3d at 1348 n.5 (quoting *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004)).

Here, Plaintiff alleges that he was placed in disciplinary confinement for 60 days due to allegedly committing battery on a law enforcement officer in the jail [ECF No. 13 at 19], meaning he was entitled to a due process hearing. *See Jacoby*, 835 F.3d at 1348-49 (concluding disciplinary segregation of pretrial detainees requires a due process hearing consistent with *Wolff*).

An adequate due process hearing is governed by the process articulated in *Wolff*. *Jacoby*, 835 F.3d at 1348. In *Wolff v. McDonnell*, 418 U.S. 539, 556, 563-67 (1974), the Supreme Court outlined specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in a prison setting. Specifically, *Wolff* requires confined persons to receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 539, 556, 563-67.

### i. Refusing to Call Requested Witnesses at Disciplinary Hearing

Liberally construing his Amended Complaint, Plaintiff claims a Jane Doe Defendant refused to allow him to call witnesses at the disciplinary hearing. [ECF No. 13 at 19, 22]. "[C]aselaw generally forbids fictitious-party pleading—that is, claims against fictitious or non-existent parties are usually dismissed." *Richardson*

15

*v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). However, there is a "[l]imited exception to this rule when the plaintiff's description of the defendant is so specific as to'" make the fictitious name, 'at the very worst, surplusage.'" *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019).

"[T]he Complaint should state that the name is fictitious and provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served." *See Keno v. Doe,* 74 F.R.D 587, 588 n. 2 (D.N.J. 1977), *aff'd without opinion*, 578 F.2d 1374 (3rd Cir. 1978). Where the Complaint provides a description that is sufficiently clear to allow service or process, it is an abuse of discretion to dismiss the defendant. *See Dean v. Barber*, 951 F.3d 1210, 1216 (11th Cir. 1992) (describing with sufficient clarity the head of Jefferson County Jail as his additional defendant when plaintiff had yet to receive sheriff's report, which would have provided plaintiff with information needed to specifically name defendant and serve process, court abused its discretion in dismissing defendant).

In the Amended Complaint, Plaintiff listed Jane Doe as a corrections counselor at a Miami-Dade County jail. [ECF No. 13, at 5]. Based on Plaintiff's allegations, it also appears this Jane Doe defendant was on the disciplinary panel. [*Id.* at 19, 22]. As it appears Plaintiff will be able to provide a sufficiently clear description in the near future, the claim shall not be dismissed for fictitious party pleading at this juncture.

16

Further, because Plaintiff has articulated a plausible due process violation due to this Jane Doe defendant not permitting him to call witnesses at his disciplinary hearing, this claim should proceed at least at this juncture. *See Wolff*, 418 U.S. at 539, 556, 563-67.

### *ii. Request for Inmate Witness Statement*

Additionally, Plaintiff claims Defendant Lewis and Defendant Duke denied him the opportunity of having inmates write a statement of what transpired. [ECF No. 13 at 22]. He also alleges that these Defendants falsely documented that he refused to write a statement. [*Id.* at 19]. Viewed together, Plaintiff has made a plausible showing that these Defendants denied him an opportunity to present documentary evidence in violation of due process. Accordingly, this claim should also proceed.

G. Violations of Religious Rights

### *i. RLUIPA*

Pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…even if the burden results from a rule of general applicability[.]" 42 U.S.C. § 2000cc-1(a). A "religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

"Once a plaintiff [makes] this prima facie showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest." *Knight v. Thompson*, 797 F.3d 934, 943 (11th Cir. 2015); *see also* 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b).

According to Plaintiff, Defendant Lewis took Plaintiff's prayer rug, prayer schedule, and Plaintiff's copy of the Quran from his cell for a period "exceeding 7 days." [ECF No. 13 at 19]. According to Plaintiff, Defendant Lewis also "prohibited Plaintiff from performing his five *obligated prayers* in the practice of Islam as a Muslim exceeding 7 days." [*Id.*] (emphasis added).

To the extent this is an individual capacity claim, RLUIPA does not create a private action for monetary damages against prison officials. *See Hathcock v. Cohen*, 287 F. App'x 793, 798 (11th Cir. 2008). Further, any attempts at injunctive or declaratory relief are now moot because Plaintiff is no longer in custody at Miami-Dade County Jail. *See id.* at 798-99.

Thus, Plaintiff can only obtain nominal damages, not compensatory or punitive, if he is able to support a claim against Defendant Lewis in his official capacity. *See id.* at 798 n.6. Based on Plaintiff's allegations, however, he has only established that he was "temporarily deprived of a particular religious devotion." *See Wilkinson v. GEO Grp., Inc.*, 617 F. App'x 915, 918 (11th Cir. 2015). Without allegations indicating that Plaintiff was unable to complete his religious obligations

once his religious items were returned to him, Plaintiff did not provide the Court with sufficient allegations to permit a plausible inference that a substantial burden transpired. *See id.* Accordingly, this claim must be denied.

### ii. Free Exercise

"[P]risoners retain the right to the free exercise of religion." *United States v. Baker*, 415 F.3d 1273, 1274 (11th Cir. 2005) (citing *Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000)). But, "[u]nlike the strict standards of scrutiny applicable to the constitutional rights of persons in free society, the Supreme Court has adopted a deferential standard for determining whether a prison regulation violates an inmate's constitutional rights." *Hicks*, 223 F.3d at 1247. "A prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." *Id.* (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The reasonableness of a challenged action or regulation considers the following factors:

> (1) whether there is a valid, rational connection between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an exaggerated response to prison concerns.

*Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) (citing *Turner*, 482 U.S. at 89-91) (internal quotation marks omitted). If a reasonable relation to a legitimate penological objective, the inquiry is at an end. *Pope*, 101 F.3d at 1385.

At this early juncture, the Undersigned is currently unaware of what basis could support the decision to take Plaintiff's religious items thereby prohibiting him from performing his obligated prayers. However, Plaintiff has not provided allegations showing that alternative means of exercising his religion were not provided, nor presented allegations as to how the lack of an accommodation impacted staff, inmates, or institutional resources. Without allegations addressing those factors, this claim should not proceed.

H. Conditions of Confinement

A convicted inmate's claims challenging the conditions of his conviction are "scrutinized under the Eighth Amendment's prohibition on cruel and unusual punishment," whereas "the conditions under which a pretrial detainee are held are reviewed under the Due Process Clause of the Fourteenth Amendment." *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016).

However, the Eleventh Circuit has held that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by

the eighth amendment for convicted persons." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1574 (11th Cir. 1985)).

Thus, the challenged conditions must be objectively "serious" and "extreme" as to deprive the prisoner "of the minimal civilized measure of life's necessities." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation marks omitted). "Even so, 'the Constitution does not mandate comfortable prisons [or jails].'" *Id.* at 1289 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). The prisoner must additionally prove "the defendant prison officials acted with a sufficiently culpable state of mind with regard to the condition at issue." *Id.* This state of mind requires: (1) awareness of the relevant facts; (2) an inference could have been drawn that there is a substantial risk of serious harm posed by the challenged condition; and (3) the defendant actually drew the inference. *Id.* at 1289-90 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The final requirement, causation, requires a plaintiff to show "a causal connection between the defendants' conduct and the Eighth Amendment violation." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015).

Plaintiff alleges he lacked access to running water for a period "exceeding 7 days." [ECF No. 13 at 19]. He also alleged that he was deprived of running toilet water causing him to inhale and be exposed to odors associated with human waste. [*Id.*]. During this period, Plaintiff alleged he was also deprived of clothing and

bedding in a cold cell. [*Id.*]. According to Plaintiff, Defendant Lewis turned off the water in his cell, took his clothing, and removed his bedding. [*Id.*].

In *Chandler v. Baird*, the plaintiff alleged that he had been subjected to a cold cell without clothes and linens, deprived of toilet paper for three days, and endured that experience without running water for two days. *Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991). Taken together, the Eleventh Circuit concluded that the allegations could show the minimal standards required by the Eighth Amendment were violated. *Id.* at 1065-66. Even in recent years, the Eleventh Circuit has echoed that "[t]he deprivation of potable water for several days is a denial of a basic need and the minimal civilized measure of life's necessities." *Spires v. Paul*, 581 F. App'x 786, 793 (11th Cir. 2014) (internal quotation marks and alterations omitted). Further, "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001).

Plaintiff, therefore, can plausibly satisfy the objective requirement due to the length and severity of the conditions. At this early juncture, and after a liberal construction, Plaintiff has provided enough allegations to support that Defendant Lewis knew of the conditions of confinement and that he could have inferred a substantial risk of serious harm, as Defendant Lewis was allegedly the person that

shut off the water, took Plaintiff's clothing, and removed the bedding from Plaintiff's cell.. Thus, this claim should proceed against Defendant Lewis.

I. Failure-to-Protect

As the Plaintiff was a pretrial detainee during the relevant period of time, the Due Process Clause of the Fourteenth Amendment applies to Plaintiff's failure-to-protect claim; however, the standard articulated for violations of the Eighth Amendment's prohibition of cruel and unusual punishment governs. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013). "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Id.* at 1331 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir.2003)) (alterations in original).

To meet this standard, Plaintiff must show there was (1) a substantial risk of serious harm; (2) the defendants exhibited deliberate indifference to that risk; and (3) causation. *Goodman*, 718 F.3d at 1331. As previously mentioned, to show deliberate indifference, it requires subjective knowledge of the risk; disregard of that risk; and conduct that exceeds mere negligence. *See Melton*, 841 F.3d at 1223 n.2 (11th Cir. 2016).

Here, Plaintiff explicitly identified Defendant Lawrence as liable for the failure to protect. [ECF No. 13, p. 20]. Plaintiff alleges Defendant Lawrence is "legally responsible for the operation and function of Metro West Jail[.]" [*Id.* at 16].

23

Plaintiff further alleges that Defendant Lawrence was provided the "emergency notice of the substantial risk of harm Plaintiff faced" with respect to Defendant Lewis and Defendant Barnes. [*Id.* at 17]. Even so, Plaintiff's allegations that Defendant Lawrence received the emergency notice is conclusory. *See Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1201 n.5 (11th Cir. 2012) (explaining factual allegations entirely relying upon mere belief are inadequate to state a plausible claim). Thus, at this juncture, Plaintiff has not made a plausible showing of Defendant Lawrence's deliberate indifference.

Plaintiff also identified Defendant Wilson as liable for failing to protect him. [*Id.* at 21]. However, similar to his claims against Defendant Lawrence, Plaintiff failed to specify how he knows Defendant Wilson received or reviewed the emergency notice. Therefore, as the claim against Defendant Wilson entirely turns on his mere belief that Defendant Wilson reviewed the emergency notice, Plaintiff has not made a plausible showing of deliberate indifference. *See Chandler*, 695 F.3d at 1201 n.5.

In addition to identifying Defendant Lawrence and Defendant Wilson, Plaintiff wrote "et al." as the other parties liable for failure-to-protect. [*Id.* at 20, 22]. To the extent Plaintiff is referring to all of the Defendants in this action, he has failed to state a claim. At its core, Rule 8 requires that defendants be given fair notice of what the claim is and the grounds upon which such claims rest. *Twombly*, 550 U.S.

at 555 (quotation marks omitted). By referring to "et al." in the Amended Complaint, Plaintiff has not given any of the Defendants the requisite fair notice.[4]

Moreover, notwithstanding that *pro se* litigants are entitled to liberal construction of their filings, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Thus, the failure to protect claim cannot proceed.

J. ADA Claim

Plaintiff also presents a claim under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.* [ECF No. 13 at 18], "which prohibits a 'public entity' from discriminating against a 'qualified individual with a disability" on account of that individual's disability[.]" *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (citing 42 U.S.C. § 12132); *see also Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009).

To establish a prima facie case under Title II of the ADA, plaintiffs must show: (1) they are a qualified individual with a disability; (2) they were either

---

[4] The Undersigned notes that one of Plaintiff's claims for relief may indicate he intended to identify Defendants Kaesenthout, Martin, and Lieutenant M.P. as Defendants for his failure-to-protect claim. [ECF No. 13, at 21]. The Amended Complaint does not provide any allegations to support they acted with deliberate indifference to a threat of serious harm. Thus, to the extent Plaintiff sought to bring such a claim against them, he failed to state a claim.

excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or were otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. *Owens v. Sec'y, Fla. Dep''t of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (quoting *Bircoll v. Miami–Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir.2007)).

Here, Plaintiff asserts Defendant Lewis deprived him of certain assisted living devices, including his back brace, wheelchair, and air mattress. [ECF No. 13 at 18]. Plaintiff alleges Defendant Lewis placed him in a "non-handicap accessible cell" "forcing Plaintiff [to] crawl on the floor" and sleep on the floor. [*Id.*].

To the extent these claims are presented against Defendant Lewis in his individual capacity, such claims must be dismissed because the ADA is actionable only against public entities. *See Hunt v. Warden*, 748 F. App'x 894, 898 (11th Cir. 2018). An ADA claim against Defendant Lewis in his official capacity is merely a claim against Miami-Dade County Corrections and Rehabilitation. *See Owens*, 602 F. App'x at 478 (explaining ADA official capacity claim against prison official was a claim against the Florida Department of Corrections).

Plaintiff has alleged that he was denied the benefits of services that the jail should have provided based upon his disability. State prisons qualify as public entities under the ADA. *See Yeskey*, 524 U.S. at 210 (citing 42 U.S.C. §

26

12131(1)(B)). County jails also qualify as public entities under the ADA. *See, e.g.*, *Smith v. Harris Cty., Texas*, 956 F.3d 311, 317 (5th Cir. 2020).

It appears Plaintiff can plausibly show that he is a qualified individual. The question remains whether Plaintiff's allegations of what appears to be a temporary deprivation of services by the jail is a violation of the ADA. At this early juncture, under these facts, it appears that he has stated a claim under the ADA, and the claim should proceed.

## K. "Fraud by False Documentation"

Plaintiff claims various Defendants are liable for "Fraud by False Documentation" pursuant to Fed. R. Civ. P. 60(b)(3) and Fla. Stat. § 817.55. The Federal Rules of Civil Procedure do not create a substantive basis for relief. With respect to Rule 60(b)(3), it applies only as a basis to relieve a party from a final judgment reached in federal court. In a similar vein, Fla. Stat. § 817.55 does not provide grounds for relief under state law. Instead, it merely codifies a crime that may be charged in state criminal proceedings. Therefore, Plaintiff's "Fraud by False Documentation" claim is frivolous and fails to state a claim upon which relief may be granted.[5]

---

[5] The Amended Complaint appears to raise claims of failure-to-protect or failure-to-intervene on behalf of other pretrial detainees. [ECF No. 13, at 22-23]. Plaintiff cannot represent the interest of pretrial detainees. *Bass v. Benton*, 408 F. App'x 298, 98-99 (11th Cir. 2011) (affirming "dismissal of a portion of a prisoner's complaint seeking relief on behalf of fellow inmates") (citing *Massimo v. Henderson*, 468 F.2d 1209, 1210 (5th Cir. 1972); *see also Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008). Further, Plaintiff cannot fairly and adequately

L. <u>Right to Communicate</u>

Convicted persons have a First Amendment right to communicate by mail with their attorneys. *Al-Amin v. Smith*, 511 F.3d 1317, 1333-34 (11th Cir. 2008); *see also Ford v. Hunter*, 534 F. App'x 821, 824 (11th Cir. 2013). The Eleventh Circuit has also indicated that there is generally a right to communicate with one's family and friends. *Wimbush v. Conway*, 768 F. App'x 958, 968 (11th Cir. 2019).

Here, Plaintiff claims Defendant Lewis deprived him of his right to communicate. [*Id.* at 18]. Plaintiff did not allege that Defendant Lewis interfered with his ability to communicate with his attorney or with family. Due to the vagueness surrounding Plaintiff's right to communicate claim, similar to his access to courts claim, it should be dismissed for failure to state a claim.

M. <u>Defendant Byron</u>

None of the allegations or claims for relief implicate Defendant Byron. As Plaintiff has not provided any allegations to support any claim against Defendant Byron, he should be dismissed for failure to state a claim.

N. <u>All Other Claims or Invocations</u>

After carefully reviewing the Amended Complaint, one final note is necessary. Here, and unique to this case, any of the other invocations of law within

---

protect the interest of such a class as required by Fed. R. Civ. P. 23(a)(4). *See Bass*, 408 F. App'x at 298-99. As such, to the extent Plaintiff sought to bring a class action lawsuit, it cannot proceed.

the Amended Complaint fail to state a claim upon which relief can be granted or are

otherwise frivolous.

## V. Conclusion

Based on the foregoing, the following claims should **PROCEED**:

>   (1)    The excessive force claims against Defendant
>   Lewis and Defendant Barnes;
>
>   (2)    The state law battery claims against Defendant
>   Lewis and Defendant Barnes;
>
>   (3)    The failure-to-intervene claims against Defendants
>   Martin, Kaesenthout, and Lieutenant M.P.;
>
>   (4)    Both deliberate indifference to serious medical
>   needs claims against Defendant Lewis;
>
>   (5)    The conditions-of-confinement claim under the
>   Eighth Amendment against Defendant Lewis; and
>
>   (6)    The due process claims against Defendants Lewis,
>   Duke, and the Jane Doe Defendant.

Additionally, the following claims should be **DISMISSED**:

>   (7)    The ADA claim against Defendant Lewis;
>
>   (8)    The access-to-courts claim against Defendant
>   Lewis;
>
>   (9)    The right to communicate claim against Defendant
>   Lewis;
>
>   (10)   The failure-to-protect claim against all Defendants;
>
>   (11)   The "Fraud by False Documentation" claim; and
>
>   (12)   The RLUIPA claim against Defendant Lewis

(13) The First Amendment Free Exercise Clause claim against Defendant Lewis;

(14) All other claims that were invoked and not fully developed against any other Defendant.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de novo* determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

Signed this 25th day of September, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:   Marvin Pace
B02617
Suwannee Correctional Institution
Inmate Mail/Parcels
5964 US Highway 90
Live Oak, FL 32060
PRO SE